STILWELL–BIERCE & SMITH–VAILE CO. v. EUFAULA COTTON OIL CO. et al.

(Circuit Court of Appeals, Sixth Circuit. June 3, 1902.)

No. 1,044.

**1. PATENTS—CONSTRUCTION OF CLAIMS—REFERENCE TO SPECIFICATION.**
When the language of a claim for a combination includes an element only described in general terms, the court may look to the specification to ascertain its meaning, and the claim may be limited by the specification, especially where it contains the expression "substantially as described," and the element in the particular form described in the specification is essential to the production of the result which is its most important function.

**2. SAME—INVENTION—NEW COMBINATION OF OLD ELEMENTS.**
A combination of old elements, if it is novel and produces a new and useful result, may be patentable.

**3. SAME—SCOPE—INCIDENTAL ADVANTAGES OF INVENTION.**
A patentee is not required to describe in full all the beneficial functions of his invention; but if a thing accomplished is a necessary consequence of the improvement made and described, making it obvious that the inventor intended it, though not specifically pointed out, he is entitled to the benefit thereof in construing his patent.

**4. SAME—ANTICIPATION—USE OF OLD ELEMENT TO PERFORM NEW FUNCTION.**
A patent for a combination in which one of the parts performs a new and important function in the operation of the machine is not anticipated as to such feature by a prior patent for a combination in which a similar part was used in a different place, where it did not perform such function.

**5. SAME—INVENTION.**
Simply to do by a steam attachment, without novelty of application or operation, what in the operation of prior machines had been done by hand, does not constitute invention.

**6. SAME—INFRINGEMENT—OIL MEAL COOKER AND CAKE-FORMER.**
The Vaile and Tompkins patent, No. 421,454, for a combined cooker and cake former for oil meal, was not anticipated, discloses patentable invention, and is valid as to claims 1, 2, 4, and 9. Claim 3 is invalid as too broad. Said valid claims also *held* infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Tennessee.

In Equity. Suit for infringement of letters patent No. 421,454, for a combined cooker and cake former for oil meal, granted February 18, 1900, to John H. Vaile and Daniel A. Tompkins. From a decree dismissing the bill, complainants appeal.

E. E. Wood and Wm. R. Wood, for appellants.
H. E. Hart, for appellee.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge. This case involves the validity and infringement of letters patent No. 421,454, granted to John H. Vaile and D. A. Tompkins for a combined cooker and cake former for oil meal. The patent sets forth that the invention relates to that class of cookers and cake formers for cooking oil meal and forming it into cakes ready to be distributed into the presses for the extraction of the oil, having for its object the provision of novel means by which

the cooking is rendered perfect and continuous, and the delivery of the cooked meal to the cake former is rendered as rapid and as nearly automatic as possible.

The record establishes that prior to the invention in question the advanced state of the art for cooking apparatus for oil meal was shown in the patent of November 11, 1884, granted to John H. Vaile, one of the patentees in the letters patent under investigation.   The Vaile patent of 1884 had for its objects the prevention of the loss of time in cooking the meal, and to promote the thorough and equal cooking thereof, by having one or more cooking tanks combined with a storage tank so arranged that the meal when cooked could be instantly discharged from one of the cooking tanks, and the cooking tanks could at once be filled with a second charge which is being cooked while the other is being taken from the storage tank.   An object of the Vaile patent was to prevent the spreading of the meal in the cooking pans by confining the same in an annular space.   This patent is illustrated by Fig. 2, taken from the drawings of the patent.

*Fig. 2.*

The invention of the Vaile patent will be understood in a general way by reference to this figure.   It shows cooker, A, discharging into a receiver from which the oil meal is discharged through the trap, G, into the car, L.   The lower gate, I, may be arranged to act automatically, in which case the gate, H, may be left open.   As the forming press, shown to the right of the drawing, rises, the bell crank, J, operates to draw back the gate, I, permitting the meal to flow from the receiver into the car, L.   When the press descends it closes the gate, I, automatically.   The car is then pushed by hand to the press to deliver the charge.   A man is required to operate the car, which, of course, should not be pushed away until the gate, I, is closed.

The patent in suit is shown in the accompanying drawings and specifications.

An examination of this mechanism shows, in our judgment, a decided advance in operation and utility over the mechanism shown in the Vaile patent of 1884. When the meal is to be cooked it is placed in the cookers, whence it passes, by the operation of the gates, into the conveyor, N, Fig. 4, through which the meal is conveyed in a stream until it is discharged into the box, E, Fig. 4. Under this box, on a table, C', Fig. 4, there slides an open and bottomless feed box, D', Fig. 4. After being filled this box is carried forward to the forming box, U, Fig. 4, into which the charge is dropped. The feed box then returns to its first position for a new charge. The cylinder, S, Fig. 4, raises the forming box from below, and the meal is pressed into the desired shape in cakes. The feed box is slid backward and forward by the action of the piston in the cylinder, F', Fig. 4, the rod, G', Fig. 4, of which is attached to the feed box. The feed box, D', Fig. 4, has rearward slide extensions, L', Fig. 4, which, as the feed box is carried forward to the forming box, acts as a cut-off to prevent the overflow of the meal except when the feed box is thereunder to receive the meal. The mode of operation is substantially as follows: The operator first arranges the cloth in the feed box. Then pulls the handle of the rod which shifts the steam valve of the cylinder, and, admitting steam behind the piston, the feed box is moved forward and delivers its charge into the forming box. When the feed box has completed its forward stroke it acts upon a trip rod which reverses the steam valve, pushing the piston and feed box back. It may thus be seen that the operator has control of the process, starting by pulling the rod which controls the steam valve. The return stroke is made automatically by the tripping arrangement described at the forward end of the stroke.

*Fig.1.*

The carrying of the meal from the charging box to the forming box is no longer necessary to be done by hand. It is accomplished by the ingenious method of attaching the sliding extension to the piston rod, and operating the same by the mechanism shown, the action of which is entirely controlled by the operator. The steam being let into the cylinder, by pulling the rod and shifting the valve, carries the charging box forward, at the same time closing the bottom of the receiving box. The forward stroke operates to automatically reverse the action of the piston, and the pull rod by the spring is carried back to its first position.

Independent of the evidence which establishes that this method was a great improvement in the ease and rapidity with which these cakes were formed, it seems obvious that this combination effects a decided advance in the process of cooking and forming oil cakes over that shown in former devices. It also discloses to our minds a very considerable degree of mechanical ingenuity in thus arranging and combining the elements to accomplish the desired result.

We come now to an examination of the claims of the patent. Claim 1 is as follows:

"The combination, with a forming press having a horizontally sliding feed box for depositing the meal in the forming box and one or more cookers, of a conveyor extending from said cooker or cookers and discharging into a box with which said feed box registers, and a cut-off slide for last-named box, substantially as described."

The novelty of this claim consists of a horizontally sliding feed box with a conveyor extending from the cookers, discharging into a box with which the sliding feed box registers, so arranged that the feeding is continuous, and the slide acting as a bottom to the feed box when the latter is carried forward to deposit its load. An essential element of this combination is the screw conveyor, which, as the testimony tends to show, feeds the meal in such manner into the charging box as to distribute it evenly and of equal density.

Aside from the experts, there were only two witnesses examined in this case, both being men of practical experience, and their testimony is uncontradicted to the effect that this method of distributing the meal by means of the screw conveyor is of very great advantage in the operation. It is shown that oil meal is moist and sticky, liable to be lumpy, and, but for the distribution made by the screw conveyor, could not be readily formed into a homogeneous mass. The claim does not limit itself to any particular form of conveyor, and is so broad and general in its terms that it claimed to be substantially covered by the Vaile patent of 1884.

While it is the purpose of the statute to require the inventor to set forth the nature and extent of his patent, and it is not the province of the courts to add to or take from a claim that which is not embraced within its language, nevertheless we may look to the specifications for the purpose of construing the language used in the claim. If this language includes an element only described in general terms, we may look to the specifications to ascertain its meaning. Soehner v. Range Co., 28 C. C. A. 317, 84 Fed. 182; Lake Shore & M. S. R. Co. v. National Car Brake Shoe Co., 110 U. S. 229, 4 Sup. Ct. 33, 28 L. Ed. 129. In this sense it has sometimes been said that claim may be limited by the specifications. Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33; The Corn-Planter Patent, 23 Wall. 181, 23 L. Ed. 161; Fuller v. Yentzer, 94 U. S. 288, 24 L. Ed. 107; Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241.

In the latter case the claim then under consideration contained the expression, "substantially as described," of which Justice Strong said:

"The first claim in the reissued patent, dated February 3, 1863, is unquestionably too broad to be sustained, unless limited to the means described in the specification. So, it was doubtless intended by the patentees to be limited, for the claim speaks of the combination claimed as 'substantially as described'; that is, described in the specifications."

To the same effect is Westinghouse v. Brake Co., 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136. In this claim there is no limitation in terms upon the kind of conveyor intended to be used, but the screw conveyor is shown in the specifications, and its presence at the place where located is essential to the production of the result in the distribution of the meal, which, the testimony tended to show, is its most important function. As to the sliding attachment, broadly speaking, it is found in the Vaile patent of 1884, above the car, L, but it does not have the operation of this attachment in the combination now under

consideration.   The elements of the combination in claim 1 may all have been taken from other machines, yet it is well settled that if the combination is novel, producing a new and useful result, it may be patentable.   Most combination claims are for old parts, which acting together, and one upon another, produce a new result.   Nor is it any valid objection that the invention does not point out in terms every function of an improvement.   From the location of the conveyor and its office in the distribution of the meal the result is necessarily obtained, and we cannot doubt that the inventor placed such a conveyor in the location named for the purpose of accomplishing this result.   An inventor is not required to describe in full all the beneficial functions to be performed by his machine.   If the thing accomplished is a necessary consequence of the improvement made and described, making it obvious that the inventor intended the thing accomplished, though not specifically pointed out, he is entitled to the benefit thereof in construing his patent.   The cases upon this subject are collected and the principle fully discussed in the opinion of this court by Judge Lurton in the case of Goshen Sweeper Co. v. Bissell Carpet Sweeper Co., 19 C. C. A. 13, 72 Fed. 67.   See, also, opinion of Judge Severens in the case of Dowagiac Mfg. Co. v. Superior Drill Co. (not yet officially reported) 115 Fed. 886.

It is true that there was a screw conveyor in the original patent to Vaile of 1884.   It was used not for the purpose of carrying the meal into the charging box, but to convey it into a receiver, not accomplishing the purpose which it does in the patent under consideration.   In the patent now before us it performs the important function of distributing the meal in the charging box, and is so arranged with the sliding attachment that it is in continuous operation.   Although not specifically mentioned in the specifications, it accomplishes this result, as the inventor obviously intended it should, and which the testimony shows, without contradiction, is highly important in the operation of the machine.   Within the principle of the cases referred to, this feature is entitled to consideration in determining the patentability of the combination under investigation.   The fact that this conveyor is found at a different place in a former combination will not defeat the claim for invention, if the new location is such as to produce a new and useful result.   It was so held by this court in Star Brass Works v. General Electric Co., 49 C. C. A. 409, 111 Fed. 398, and in Dowagiac Mfg. Co. v. Superior Drill Co., supra, not yet officially reported.   Limited to the mechanism shown in the drawings, we think this is a valid claim.

Claim 2 is for the same general combination as claim 1, adding the controlling gates in the cookers, and it is not necessary to dwell further upon it.

Claim 3 is as follows: "The combination with a forming press of a feed box actuated by a piston rod and piston inclosed in a cylinder, substantially as described."   This claim is too broad, and its patentability can only be sustained by writing into it features not mentioned therein.   Simply to do by a steam attachment, without novelty of application or operation, what had previously been done by hand does not disclose invention, and this is all that is included in the language used.

The fourth claim is like the third, adding the initiation of the return of the feed box by the trip attachment operating at the end of the forward stroke. Nothing is shown to have anticipated this claim. It limits this reversal to the automatic trip mechanism actuated at the end of the forward stroke. The utility of this device is apparent. When the meal is discharged into the forming box this automatic trip device releases the pull rod, which initiates the return movement, leaving the rear valve to close and be ready for the repetition of the forward movement at the will of the operator.

Claim 9 adds the element of the forming press, U, to those shown, and is, in our opinion, a valid claim.

An attempt has been made by ingenious and capable experts to show that these claims have been anticipated by other inventions, all of which we have examined, notably the Koch and Then patent, No. 351,780, for a brick press, much relied upon. It is claimed that the forward and backward movement of the charging box is practically the same as is shown in the invention under consideration. An examination of that patent shows that the movement of the charging box is produced automatically by an hydraulic engine working continuously. It is quite a different machine from the one under consideration, but some suggestions might be derived from it by one skilled in its use.

The spiral conveyor is shown in other patents as well as in the Vaile patent of 1884, but none of the other patents are for oil cake pressing machines, which require for their successful operation a peculiar mechanism. If they did contain the elements of this machine, it would be none the less invention to combine them so as to produce the new and useful result which the inventor in this case, we think, has accomplished. We are of opinion that the claims herein referred to are valid for the reasons stated.

As to infringement, the testimony tended to show that the inventor of the machine used by the defendants, Mr. Bushnell, visited and examined one of the complainant's machines, taking measurements thereof, and subsequently constructed his machine. This testimony is undisputed. There are apparent some changes and departures from the complainant's invention. The conveyor, instead of being attached directly to the conveyor trough of the cookers, has an intervening receiver, but the spiral conveyor accomplishes the purpose of the complainant's method by direct attachment to the charging box, an added argument as to the utility of the complaianant's device, and we think an infringement of it. The method of operating the machine is a little different, but it has the meritorious feature of continuous movement by means of a lever or pull actuated by the operator with the automatic trip device, differently constructed, it is true, but operating at the end of the forward stroke with the practical effect of the complainant's mechanism.

We think infringement is clearly shown of claims 1, 2, 4, and 9.

For the reasons stated, we think the circuit court erred in holding the patent void for want of novelty, and the decree is reversed, and the cause remanded to the circuit court, with instructions to render the usual decree, in conformity with this opinion, for the complainant and against the respondent for an injunction and accounting.